Rubber Mfg. Co. v. Supply Co.

GUTTA PERCHA RUBBER MANUFACTURING COMPANY v. KANSAS CITY FIRE DEPARTMENT SUPPLY COMPANY et al.; RIEGER, Garnishee, Appellant.

### Division Two, May 9, 1899.*

1. **Chattel Deed:** POSSESSION BY GRANTOR: FRAUD. If the grantor remains in possession after having made a deed of trust on his stock of goods for the benefit of another, and conducts the business he had previously done, with no obligation to turn over the proceeds of the business to the beneficiary, his conduct is fraudulent in law.

2. ———: ———: ———: WHEN CURED BY POSSESSION. But if the trustee is placed in actual possession, such possession will cure the invalidity with which the deed of trust is tainted by such previous conduct, provided always that the subsequent conduct and agreements between the grantor, the beneficiary and the trustee, do not disclose that the trust deed and the possession were a scheme for the use of the grantor, and designed to hinder delay and defraud the grantor's other creditors.

3. ———: CONDUCT OF PREFERRED CREDITOR. A preferred creditor must only act for the honest purpose of securing his own debt. The mere knowledge that his preference will delay or hinder other creditors or that the debtor so intended it, will not of itself defeat his preference; but if it appear from all the circumstances that he was not acting solely for the purpose of protecting and saving his own debt, but was aiding the debtor to defeat or delay his other creditors, or in covering up his property or in giving him a secret interest in the property of locking it up for the debtor's use and benefit, the deed of trust preferring him is fraudulent as to other creditors.

4. ———: ———: CARRYING OUT SUBSISTING CONTRACTS. It is not fraudulent for the trustee after he goes into possession of the property to continue the business for the purpose of finishing improvements begun, and carrying out contracts partially fulfilled, by the grantor, which would be a total loss unless finished, if such business is limited to the sale of the mortgaged stock and such necessary purchases of material as will make the unfinished product available. But if, in pursuance of an understanding with the mortgagor and the beneficiary, he buys and sells goods and continues to manufacture a line

*NOTE.—Decided March 28, 1899. Motion for rehearing filed. Motion overruled May 9.

of goods which had already proved unprofitable, and undertakes to continue the business indefinitely for the purpose of paying off the beneficiary's claim and restoring the business to the mortgagor, his conduct, thereby delaying other creditors and compelling them to await a venture with their debtor's goods, however free from bad faith or actual fraud the arrangement may be, is fraudulent in law.

5. ———: ———: MUST SURRENDER PROPERTY. A preferred creditor can not continue to claim his preference in the attached property when the court or jury finds he has been a party to a fraudulent contrivance to defeat or delay other creditors.

6. ———: ———: ———: WHERE HIS DEBT EXCEEDS AMOUNT OF PROPERTY. And such contrivance is none the less fraudulent in law whether the property affected be large or small, whether it exceed or be less in value than such preferred creditor's claim.

7. ———: RESOLUTION: PART OF TRUST DEED. A resolution of a company transferring its property to a trustee for the benefit of certain preferred creditors, which expresses the purposes for which the transfer is made, adopted in pursuance to an understanding with the trustee and the preferred creditors, is to be considered as if written into the conveyance itself.

*Appeal from Jackson Circuit Court.*—HON. C. L. DOBSON, Judge.

AFFIRMED.

J. W. GARNER and W. H. WALLACE for appellant.

(1) The trustee, by the terms of the deed of trust was, upon default, entitled to the possession of the mortgaged property. Jones on Chat. Mort. (3 Ed.), sec. 705; Bower v. Benson, 57 Mo. 26; Burnett v. Timberlake, 57 Mo. 499; Sheble v. Curdt, 56 Mo. 437. (2) The trustee being, under the terms of the mortgage, entitled to the possession of the mortgaged property, and having taken possession of the same with the consent of the mortgagor, his possession was lawful. (3) When the mortgagor defaulted in the conditions of the deed of trust, the title to the property vested absolutely in the mortgagee, subject only to the equity of redemption in the mortgagor. Barnett v. Timberlake, 57 Mo.

499; Robertson v. Campbell, 8 Mo. 615; State ex rel. v. Adams, 76 Mo. 605; Burnett v. Curdt, 56 Mo. 437. (4) The trustee, having taken possesion of the property in the deed of trust, was not compelled to foreclose the equity of redemption. Roberson v. Campbell, 8 Mo. 365; Flanders v. Chamberlain, 24 Mich. 615; Dean v. Davis, 12 Mo. 112; Bradley v. Redmond, 42 Ia. 452; Cobbey on Chat. Mortg., sec. 379; Durfe v. Grinnell, 69 Ill. 371; McConnell v. Scott, 67 Ill. 274; Jones on Chat. Mortg., sec. 773. (5) The mortgagee being, after default, entitled to the possession of the property and having the absolute title to the same, subject only to the equity of redemption in the mortgagor, the trustee in case of a failure to foreclose the mortgage, would be liable only for the value of the goods in excess of the debt secured by the mortgage. Callen v. Rose, 47 Neb. 638; Tobener v. Hassenbusch, 56 Mo. App. 591; Whittemore v. Fisher, 132 Ill. 243; Burr v. Dana, 72 Wis. 642; Case v. Broughton, 11 Wend. 106.

GAGE, LADD & SMALL for respondent.

(1) At any time before February 10, 1893, when the trustee took possession, the property covered by the two deeds of trust was liable to attachment. The deeds of trust were fraudulent and void as against creditors, because the maker of them, in pursuance of an agreement with the bank and with its knowledge, permission and consent, continued the prosecution of its business in the ordinary course of trade with no obligation to account to the beneficiary in the deed of trust for any of the proceeds of the business. Barton v. Sitlington, 128 Mo. 164; Bank v. Powers, 134 Mo. 432; Bullene v. Barrett, 87 Mo. 185; Reed v. Pelletier, 28 Mo. 173; Sauer v. Behr, 49 Mo. App. 86; Smith v. Ham, 51 Mo. App. 433. (2) From and after February 10, 1893, the two deeds of trust in connection with the agreements under which the trustee took possession of the property and carried on the

business, constituted within the meaning of the statute, conveyances to the use of the grantor, and were conveyances made and contrived with the intent to hinder, delay and defraud the creditors of the Kansas City Fire Department Supply Company, and therefore void as against such creditors. Bigelow v. Stringer, 40 Mo. 195; Shelley v. Boothe, 73 Mo. 74; McDonald v. Hoover, 142 Mo. 484; State to use v. Mueller, 10 Mo. App. 87; Oliver-Finnie Grocer Co. v. Miller, 53 Mo. App. 107; Dunham v. Waterman, 17 N. Y. 9; Means v. Dowd, 128 U. S. 273; Bank v. Sprague, 17 Fed. 784; De Wolf v. Sprague Mfg. Co., 49 Conn. 282; Gardner v. Bank, 95 Ill. 298; Milligan v. O'Conor, 19 Ill. App. 487; Bank v. Inloes, 7 Md. 380; Inloes v. Bank, 11 Md. 173; Maughlin v. Tyler, 47 Md. 545; Jones v. Syer, 52 Md. 211; Gardner v. Bank, 13 R. I. 155; Landeman v. Wilson, 29 W. Va. 702; Whallon v. Scott, 10 Watts, 237; Catt v. Wm. Knabe Mfg. Co., 93 Va. 736; Webb v. Armistead, 26 Fed. 70; Renton v. Kelly, 49 Barb. 536; Gallagher v. Goldfrank, 75 Tex. 565; Gregg v. Cleveland, 82 Tex. 187. (3) The plaintiff is not estopped from questioning the validity of the conveyances. The evidence does not show that the plaintiff knew the nature of Rieger's relation to the business when it sold merchandise to him. Moreover, no declarations of law upon the question of estoppel were asked in the court below by the appellant. The case was not submitted in the circuit court upon that theory. Therefore, it will not be considered here. Daudt v. Keen, 124 Mo. 105; Mead v. Spalding, 94 Mo. 43; Krider v. Milner, 99 Mo. 145; Harrison v. Bartlett, 51 Mo. 170; Taylor v. Russell, 8 Mo. 701; State v. Noeninger, 108 Mo. 166; Dickson v. Elevator Co., 44 Mo. App. 498; Fell v. Coal Mining Co., 23 Mo. App. 216; Harper v. Morse, 114 Mo. 317.

GANTT, P. J.—Plaintiff began an action against defendant by attachment on April 6, 1894, and on the same

day garnishment was served on James C. Rieger, the appellant herein. The attachment was sustained and judgment rendered against defendant for $3,628.02.

Subsequently the issue between plaintiff and the garnishee was tried, and judgment rendered against the garnishee on April 11, 1896, for $3,892.86. From that judgment this appeal is prosecuted.

The issue arises upon the usual interrogatories propounded to the garnishee, to which he answered at great length "that on the 12th day of December, 1891, James H. Casey, doing business under the name and style of the Kansas City Department Supply Company delivered to garnishee as trustee a deed of trust of that date, which was duly recorded on that day, to secure the payment of notes amounting to $10,000. That afterwards said Casey and others incorporated said business under the name of 'The Kansas City Fire Department Supply Company' and afterwards on December 13th, 1892, said incorporation made and delivered to garnishee as trustee its certain other deed of trust to secure $4,000, which was duly recorded. That both of said deeds covered and conveyed all the stock, furniture, fixtures and machinery at the place of business of said corporation, No. 2932 Fairmount Avenue."

The answer then proceeds:

"That on the 10th day of February, 1893, the indebtedness secured by said trust deeds amounted to fourteen thousand five hundred dollars, and on that day the said Kansas City Fire Department Supply Company was owing George C. Hale royalties on his patented articles manufactured by said company, about three thousand five hundred dollars, and was owing the American National Bank, on account of a protested check, drawn without funds to meet it, the sum of two hundred and seventy dollars and seven cents, and the American Express Company seventy-one dollars and five cents, all of which had to be immediately adjusted or provided for, and all of which, at the time of the

assignment of the book accounts to the said bank, hereinafter mentioned, the said company requested the trustee and the Missouri National Bank, to pay out of said book accounts, which it agreed to do.

"Said company was also owing labor claims amounting to about one thousand eight hundred dollars, upon which said company, on said February 10, requested said bank and said trustee to pay whatever they could, which it agreed to do; that on said 10th day of February, 1893, the Missouri National Bank of Kansas City, being the owner and holder of said claims secured by said trust deeds, a portion of them being past due, and said bank realizing that it had not ample security, and deeming itself insecure, demanded that said trustee take possession of said property described in said deeds, and proceed to realize thereon, to pay such indebtedness.

"That at or about such time, said bank demanded of said company additional security; that said company, by authority of a resolution of its board of directors, transferred, sold and assigned unto the said bank, as additional security, all its book accounts, claims and demands.

"That on said 10th day of February, 1893, the property covered by said deeds, and the account, claims and demands of said company were not sufficient in value by several thousand dollars to pay said indebtedness to said bank, and said labor and royalty claims, and the said claims of the American National Bank and the American Express Company.

"That said trustee, on that day demanded of said company the possession of said property, and said company delivered same to him.

"That said company was organized for the express purpose of manufacturing George C. Hale's water tower, swinging harness and other fire department supplies, and was almost useless for other purposes; that there were on hand, in process of construction, for different cities of the United States,

water towers and other supplies, which, unless finished, would be almost a total loss; that in consideration of said facts, the said company, by resolution, authorized and requested this garnishee to keep the said plant running under his supervision and in his name as trustee, but said trustee made several efforts to dispose of said property without great sacrifice, and failing in this, he did keep said plant running under said authority and for the purpose as stated, until the 18th day of May, 1894, first having to enter into a contract with Geo. C. Hale for the privileges and right to manufacture under his patents.

"That during said time a settlement was agreed upon between said company and Geo. C. Hale, at and for the sum of twenty-five hundred dollars which was paid him, as herein-before stated; that the claim of the American National Bank and of the American Express Company was also paid, as stated, and there was paid on labor claims $838.77.

"That prior to said 18th day of May, 1894, George C. Hale, unbeknown to this trustee, made a disposition to Chicago parties of the most important of his patents, and thereby rendered a further continuation of the business an injury, and a loss to all parties concerned; whereupon the said trustee made further efforts to dispose of said mortgaged property at private sale, and failing in this, advertised the same in the Kansas City Mail, for sale at public auction, to the highest bidder for cash, describing the property and giving the date, time, terms and place of sale, and on said 18th day of May, 1894, in pursuance of said advertisement, he did offer said property for sale at public auction, first offering to sell any portion of said property, if there were bidders for any portion thereof.

"There being no bidders for a part of said property, this garnishee, as such trustee, offered all of said property for sale at public auction, and did sell the same at and for the price and sum of three thousand nine hundred and eighty

dollars, it being the best and last bid therefor; said property being described as follows:"

(Setting forth a minute description of the personal property).

"Which said sum of three thousand nine hundred and eighty dollars was applied to the payment of expenses and said mortgage debts, and thereafter on the ——— day of May, 1894, all the unpaid book accounts were sold for the sum of seven thousand five hundred dollars, and on the same day, the two unfinished towers were sold, subject to the five hundred dollars royalty on each, for the sum of five thousand dollars, making a total of sixteen thousand four hundred and eighty dollars, realized from the sale of the mortgaged property, book accounts and two unfinished towers, the twelve thousand five hundred dollars of which was also applied to the payment of the balance of the debts secured by the trust deeds, amounting, on May 25, 1894, to thirteen thousand two hundred and sixty-four dollars, and to the payments by the bank of the balance of money advanced out of the book accounts on the claims hereinbefore referred to; and to the expenses, charges and costs of handling, operating, and managing the said business, and in disposing of said property."

Plaintiff filed a denial of the garnishee's answer, in which it alleged its incorporation under the laws of New York, the indebtedness of defendant to plaintiff for goods sold prior to February 1st, 1893, and the giving by defendant of three promissory notes for $1,101.40 each; the rendition of the judgment thereon, and the sustaining of the attachment, the service of the garnishment herein.

"That on February 10, 1893, the said garnishee wrongfully took into his possession property of the Kansas City Fire Department Supply Company of the value of $27,611.84, and which consisted of accounts, notes and other

evidences of debt to said company to the amount of $12,281.22; stock on hand, iron, brass, wood, leather, casting, wire, nozzles, trimmings, etc., belonging to said company, amounting to $9,121.45; machinery of different kinds, engines, boilers, lathes, drills, wheels, etc., in use in the business, also tools, patterns, and the like, amounting to $7,905.71, and the furniture, safes, desks, tables, cases, stores, shelves, presses, etc., of the value of $303.45, and the said garnishee had of said property on hand when the garnishment was served on him, amounting in value to more than $15,000 and which amount, or so much thereof as is necessary, is applicable to the payment of the judgment so obtained by plaintiff as aforesaid.

"That said garnishee took said property wrongfully (and without the consent of said defendant), and without any right so to do, and pretended to hold and dispose of the same under power given in two deeds of trust made by said defendant to him as trustee and which deeds of trust were held by the Missouri National Bank, of Kansas City, Mo.; that upon taking possession of said property the garnishee did not dispose of the same as provided in said deeds of trust, but with the knowledge and approval of said bank said garnishee used all of said property in all respects as it had been used by said defendant, and so continued until May 19, 1894, during which time the machinery was greatly damaged, the stock on hand was mixed with other goods bought, and the two commingled as a whole in the manufacture of new goods which were sold, the proceeds of such new goods were used to buy new material, and all done under the direction of said garnishee, and with the knowledge of said bank; that such possession was taken and said property was used in that way so as to hinder, delay and defraud the creditors of said defendant, and such deeds of trust became and were absolutely void, and were such at the time of the service of the garnishment herein.

"That if said garnishee paid out or otherwise disposed of said property, or any part of it, or with the proceeds thereof, before the service of the garnishment, he did so voluntarily, and without the direction of said defendant.

"That each and every one of the allegations of the garnishee were untrue save and except as expressly admitted and alleged by plaintiff" and asked judgment for the amount of plaintiff's debt, interest and costs.

The garnishee filed his reply and denied each and every allegation therein contained except as thereinafter admitted.

After reiterating the execution of the two deeds of trust mentioned in its answer to the garnishment in the aggregate of $14,500 on February 10th, 1893, he proceeds to state that "on the said 10th day of February, 1893, the said Kansas City Fire Department Supply Company, as such corporation, assigned and delivered all of its book accounts and evidences of debt to the Missouri National Bank, a corporation duly organized under the National Banking Act of the United States of America, and directed the said Missouri National Bank, out of the proceeds realized from the collection of said book accounts and evidences of debt, to pay to George C. Hale royalties due him by the said Kansas City Fire Department Supply Company, the sum of three thousand five hundred dollars, and the sum of two hundred and seventy dollars, due the American National Bank, and the sum of seventy-one dollars and five cents, due the American Express Company, and to apply the remainder upon its indebtedness to the Missouri National Bank, and to apply any remaining sum realized from said book accounts and evidences of debt, after paying the above accounts and indebtedness due the Missouri National Bank, in said deed of trust described, in payment of the sum of eighteen hundred dollars due various parties for work and labor performed for said defendant.

"The garnishee says that afterwards the said Missouri National Bank turned over said account and evidence of debt to him for the purpose of collecting the same and applying the proceeds as herein aforesaid.

"This garnishee further says that the said indebtedness described by said deeds of trust, being past due, with accrued interest thereon, and the said Kansas City Fire Department Supply Company being pressed to liquidate the accounts herein aforesaid, the said beneficiaries in said deeds of trust, the Missouri National Bank, directed him, as trustee, to take possession of the property described in said deed of trust, and heretofore described in garnishee's answer, and plaintiff's denial, and that in obedience to said request, and also in obedience to a request of said company made on February the 10th, A. D., 1893, he, as such trustee, did, in pursuance of the powers vested in him by said deed of trust, take possession of said property, which said request of said defendant comapny to take possession of said property in pursuance of the power in said deed of trust contained, was expressly given by resolution of its duly qualified board of directors, and that in pursuance thereof, he, as such trustee, did take possession of said property.

"This garnishee says that the said Kansas City Fire Department Supply Company was organized for the express purpose of manufacturing George C. Hale's water tower, swinging harness and fire department supplies, and that part of said property in said deed of trust described, which the said trustee took possession of, was partially manufactured into water towers, swinging harness and other supplies, and was purchased by the said Kansas City Fire Department Supply Company for the purpose of manufacturing the same. That there was a number of water towers and other supplies in process of construction for different cities of the United States, which, if not completed, the material would be almost a total loss and that there were orders on hand for the

manufacture of other water towers and supplies, for which the material then on hand had been purchased, and that the same was almost valueless for any other purpose, and that a portion of said account and evidences of debt turned over as aforesaid, to the Missouri National Bank, consisted of contracts for the sale of George C. Hale's water tower, which towers were then in process of construction and were orders for other towers to be constructed, and that if said towers were not completed and said orders not filed, such accounts and evidences of debt would be valueless and not collectible, and this garnishee, as said trustee, and the Missouri National Bank, beneficiary in said deeds of trust, and said defendant company, recognizing that unless said contracts were completed and said water towers and other supplies manufactured, and said orders filled, such property would be totally and almost wholly inadequate to satisfy and pay off the indebtedness in said deed of trust described, and the accounts herein aforesaid, did proceed to manufacture the same, first having obtained permission from the Kansas City Fire Department Supply Company to manufacture the same to fill said orders, by a resolution duly passed by its board of directors at a regular meeting of its said directors (and to enable this garnishee to fill said orders, and to manufacture said water towers, the Missouri National Bank advanced to this trustee such sums of money as were necessary from time to time, to pay the expenses of the same, and to purchase such materials as were necessary to complete said water towers and other fire supplies), and that this garnishee, as such trustee, expended only such money as was necessary to the completion and carrying out of the contracts then on hand and the filling of such orders as were then on hand, and purchase only such materials as was necessary to carry out the contracts as aforesaid.

"This garnishee says that after paying the expenses of carrying out the contracts herein aforesaid, and purchasing

such material as was necessary to carry out such contract, and to pay the royalty on the machines manufactured, the remainder of the goods left on hands were by him, as such trustee, advertised and sold at public vendue under and in pursuance of the provisions of said deed of trust, and all the proceeds—those realized from the manufactured article as herein aforesaid, and those realized from the sale, under the deed of trust, as herein aforesaid, after paying all expenses, and the accounts, as herein aforesaid, were applied in the liquidation and discharge of the indebtedness herein aforesaid, and the same was insufficient to pay off and satisfy said indebtedness.

"Garnishee, for further answer, says that the property turned over by him to the defendant company under the provisions of said deed of trust was not worth the sum of six thousand dollars, and said property, together with the moneys realized from the collection of the accounts herein aforesaid, was totally and wholly inadequate to pay off and discharge the indebtedness in said deeds of trust described."

I.  The evidence tends very conclusively to establish that after the execution of the two deeds of trust on the stock of goods and machinery, the defendant continued its business exactly as Dr. Casey and the incorporated company had prior to their execution, with no obligation to turn over the proceeds of sale to the beneficiary bank, and that this course was pursued up to February 10, 1893, when Rieger the trustee took possession.  That such conduct is fraudulent in law, must now be considered settled in this State.  [Barton v. Sitlington, 128 Mo. 164; Rock Island Bank v. Powers, 134 Mo. 432.]

While this is true inasmuch as the trustee under the terms of the trust deeds was entitled upon default to the possession of the mortgaged property, and had taken and was in actual possession thereof prior to and at the time of the service of the garnishment, such possession would have cured

the invalidity with which those deeds of trust were tainted provided always the subsequent conduct and agreements between the beneficiary bank, and the grantor and trustee do not disclose that these trust deeds and the possession of the trustee were in fact a scheme for the use of the grantor, and designed to hinder, delay and defraud the other creditors of the grantor, the Supply company.

This was the controlling issue in the circuit court.

While the courts of Missouri have firmly maintained the right of a debtor to prefer one creditor or set of creditors to others and the corresponding right of the preferred creditor to accept such preference, it has been uniformly ruled that in such case the preferred creditor must act only for the honest purpose of securing his own debt. The mere knowledge that his preference will delay or hinder other creditors or that the debtor so intended it, will not of itself defeat his preference, but if it appear from all the circumstances that he was not acting solely for the purpose of protecting and saving his own debt, but was aiding the debtor to defeat or delay his other creditors, and in covering up his property or giving the debtor a secret interest in the property or in locking it up for the debtor's own use and benefit, then the transaction will be adjudged fraudulent as to other creditors. [Bigelow v. Stringer, 40 Mo. 195; Shelley v. Boothe, 73 Mo. 74; McDonald & Co. v. Hoover, 142 Mo. loc. cit. 498.]

The answer and reply of the garnishee alike indicate the defense of the trustee, and it is this, the Supply company was organized with a view to manufacturing George C. Hale's water tower, swinging harness and other fire department supplies; that at the time he took possession there were on hand in process of construction for different cities of the United States, water towers and other supplies in an unfinished condition, which would be a total loss unless finished, and in view of this fact, the trustee continued the

business and with that purpose obtained the written consent of the mortgagor in order to protect the trustee as to necessary expenditures.

If this was in fact the only purpose it was lawful and the plaintiff concedes that it would be, but it is at this point, that the serious controvery arises.

The plaintiff insists that the business carried on by the trustee had no such limitations, and marshals the evidence to sustain its contention, and the trial court evidently took that view, as its declarations of law and its finding for plaintiff clearly indicate. Recurring to the evidence, we find that on the tenth of February, 1893, Dr. Casey, the president of the Supply company and the owner of all its stock with the exception of two shares, one of which was held by Trimble and the other by Patton, went to the Missouri National Bank and met D. V. Rieger, the president, who said to Casey that he heard rumors that other creditors were about to attach the mortgaged property, and suggested that the accounts due the Supply company should be assigned to the bank, in addition to the mortgages, and Casey assented to this.

On the same day, the president of the bank, D. V. Rieger, and the trustee, James C. Rieger, and Casey had a conference at which it was agreed the accounts should be assigned, but that it must be done by the authority of the board of directors of the Supply company.

A meeting was held and the following assignment directed and made: "For value received we hereby sell, assign and set over to the M. N. B. of K. C. all of the above and foregoing book accounts, claims and demands. Feby. 10th, 1893."

On the same day according to Dr. Casey's evidence, the Riegers proposed and he agreed that if they could devise any method by which the business could be continued, he would like to know it. They said they thought they knew a plan by which this could be done, and attachments avoided.

It was arranged that the trustee should at once take possession and the business should go on in ·J. C. Rieger's name but Casey was to be in charge as before.   Casey, Trimble and Trimble's daughter were each to have positions.   D. V. Rieger says nothing was said about probable attachments, but agrees that it was contemplated that the business should continue.

The garnishee testified that Casey was anxious that the business should go on, but that he told Casey that it would be impossible to ·run the business under the two trust deeds and that the only way was for the board of directors to authorize him to do so and he reported to the bank that Casey was anxious to· keep the business running and he advised this was the best way for the bank if the board of directors would authorize it.   D. V. Rieger ·testified, "All felt that it ought to be continued as a plant." Thereupon the trustee prepared the following resolutions and power of attorney for the board of· directors of the Supply company to adopt and execute:

"Kansas City, Mo., Feb. 10, '93.

"At a meeting of the directors of the Kansas City Fire Dept. Supply Co., held at their office on this day, Feb. 10, 1893, the following resolution was unanimously adopted:

"Resolved, That J. C. Rieger, trustee in two certain trust deeds now held by the Missouri National Bank on this company's property, be, and he is hereby authorized and empowered to carry on and conduct the business of this company and operate this plant, and do whatever in the premises he may consider to the best interest of all concerned.

"And to that end be it further resolved, that the president of this company be and he is hereby authorized, empowered and instructed to transfer, assign and deliver unto said J. C. Rieger, trustee, the company's contracts with Chief Hale and others, concerning the manufacture of patented articles; subject, however, to the approval of said patentees.

And it is hereby understood between J. C. Rieger, trustee, and the Kansas City Fire Dept. Supply Co., that these contracts as hereby assigned shall revert back to the Kansas City Fire Dept. Supply Co. at such time as the Kansas City Fire Dept. Supply Co., show their readiness and ability to liquidate or make satisfactory the indebtedness due the American National Bank.

"James H. Casey, President.

"D. A. Trimble,

"Frank S. Patton."

Under this resolution, James C. Rieger, trustee, took possession. The next day Rieger prepared another paper and presented it to Casey, who signed and delivered it. That was as follows:

"Kansas City, Mo., 2-11, 1893.

"Know all men by these presents, that Mr. James C. Rieger, trustee in two certain deeds of trust heretofore executed by this comapny, is hereby authorized and empowered to conduct the business of this company, and to do therewith as may be necessary, or as to him may seem best to realize the most that he can to pay our indebtedness secured by said deeds, and to realize as much thereof for our benefit as he can.

"K. C. F. D. Supply Co.

"By J. H. Casey, Prest."

The testimony as to the value of the property turned over was conflicting. The inventory made by Townley for the garnishee when he took possession, amounted to $16,722.94, exclusive of the book accounts, but the witness stated it was the old inventory carried forward so that Casey might show it to parties he was endeavoring to interest in the matter. Other evidence tended to show the property was worth $1,700 exclusive of the book accounts. Still another that the stock on hand exclusive of machinery was worth $6,000. About one-third of the machinery was adapted

solely to manufacturing the Hale patents, but the remainder was valuable for other purposes. The trustee on the other hand valued the machinery at $2,000; the stock at $1,500 or $1,800; furniture $125. An inventory by the trustee in April, 1894, amounted to $13,206.50. The accounts amounted to $12,000 but this sum included a water tower on exhibition at the World's Fair, and carried at $4,500. Exclusive of this item the accounts aggregated $7,781.22. All the accounts were collected except $472.38, and the World's Fair tower sold for $4,500 to the city of New Orleans.

When Dr. Casey turned over his plant to the trustee on February 10, 1893, his company was indebted to creditors other than the Missouri National Bank, $15,000. After the trustee took possession the business was carried on just as before. Merchandise was bought and sold, raw material purchased and the manufactured articles sold. New goods were bought and intermingled with the old, price lists were circulated and orders solicited. A bank account was kept with the Missouri National Bank, into which all receipts of the business were deposited and checks drawn on it for the expenses of the business. If the trustee needed money he made his note to the bank, and its proceeds were placed to the credit of this account. Casey was foreman, and Trimble employed. For fifteen months, this business was thus prosecuted with the knowledge and consent of the bank, and the Supply company. While the trustee testified that he only ordered new material to complete orders which had been taken prior to February 10, 1893, and to work up material on hand when he took possession, Casey and Trimble testified that at the time the trustee took charge, there was very little work to be done under contracts then on hand, and the material ordered by the trustee was not to supplement that which was in stock.

D. V. Rieger, president of the bank, testified: "I was trying to help Casey out, for it was the desire of the bank to

help Casey out if it could.    We run it in the first place after the trustee took possession to help Dr. Casey out, and expecting we would be able to get our money out of it and be able to turn it back to him in as good shape as we got it."

Hale, a witness for the trustee, said:    "Dr. Casey told me the bank had things in such shape that he could not be annoyed by attachment; that it was the intention to run the business in that way until there could be enough made out of it to pay the bank off and then it would turn it back to him."

The annual business of the concern amounted to about $50,000.    During the trustee's administration of fifteen months, it amounted to $46,000, itemized as follows:

Paid out for merchandise . . . . . . . . . . . . . . . . . . . . . . . $16,650.07
Manufacturing expenses, coal, labor, etc . . . . . . . . . 11,877.28
General expenses, including salaries, insurance,
    taxes, etc . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7,482.85
Interest and discount account . . . . . . . . . . . . . . . .    1,006.55
Royalties (exclusive of $2,500 paid to Hale on old
    account) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6,781.05
Freight and drayage . . . . . . . . . . . . . . . . . . . . . . . . . .    1,241.45
Rent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1,304.94

    Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $46,344.19
Upon the foregoing evidence the circuit court gave the following declarations of law for plaintiff:

1.    The court declares the law to be that if in the taking of possession by the trustee, J. C. Rieger, it was the understanding by and between the bank, the trustee and the company, that said trustee should continue the business indefinitely, and should buy and sell goods so as to continue the business at the pleasure of the trustee, then such possession was fraudulent as against the other creditors of said Supply company, and plaintiff is entitled to recover.

2.    The court declares the law to be that if there was an understanding by and between the bank, the trustee, and the Supply company, that the trustee should take possession

and continue the business indefinitely so as to prevent any other creditors from attaching the property, then this would render said deeds of trust fraudulent, and the plaintiff would be entitled to recover.

3.   If the evidence shows that Rieger, trustee, took possession of the property described in the two deeds of trust on or about February 10, 1893, and proceeded to sell from the same, but did not apply the proceeds to the payment of the notes described, but used the same to buy other goods and so continued selling and buying and all this was done with the knowledge and consent of said bank, and said Supply company, then said deeds of trust became void as against creditors, and the finding must be for the plaintiff.

To the giving of these, the appellant objected and excepted.

Error is assigned as to each of these declarations of law.

The first is assailed on the ground that there was no evidence to support it.

We can not concur in the garnishee's view of the evidence on this point.   Conceding that the indebtedness to the bank was *bona fide;* that Dr. Casey or his company had the right to prefer the bank as it did, still if the evidence shows that in taking possession under these deeds the trustee was not acting solely for the protection of the bank, but that there was a mutual agreement between Dr. Casey, the bank and the trustee that the trustee should continue the business indefinitely and buy and sell goods at the pleasure of the trustee, the transaction was without the countenance of the law.   If limited to the sale of the mortgaged stock, and such necessary purchases of material as would have made the unfinished product available it would have contravened no sound principles of law but for the trustee under such an arrangement to obtain possession under the two trust deeds and then embark upon the hazards of manufacturing a line of

goods which had already proven unprofitable, and risk the stock in an enterprise altogether distinct from the hazards of an ordinary foreclosure by sale, is fraudulent in law, however free of bad faith or actual fraud the arrangement might have been.    That such an understanding was had, there was ample evidence to be found in the testimony of the president of the bank, the trustee, and Dr. Casey.

This view fully accords with the natural desire of Dr. Casey to preserve his plant, either for the purpose of taking in partners in the business, or that the business itself might pay out under the trustee's management and save him a surplus.    Such was the clearly expressed intention of the bank, and it seems too clear for doubt that such constituted the controlling motive of Dr. Casey to transfer all his accounts to the bank in addition to their preferred mortgage liens on all his plant.

Innocent as the purpose may have been in intention, we can but regard it as a scheme to delay all other creditors and compel them if it succeeds, to await the result of a venture with their debtor's goods, to which they have not assented.

If permitted, it will invite debtors to select some favorite creditor who will join them in locking up their assets and holding their creditors at arm's length for an indefinite time, if not forever.    The law does not extend the preference of any creditor to this length.    We think the declaration of law was correct, and supported by the testimony.

If the two deeds of trust had contained the stipulations expressed in the resolution of the board of directors of the supply company, and the power of attorney of its president and all the parol agreements testified to by Dr. Casey and the two Riegers contemporaneous with the taking possession, the mortgages would have been construed to be fraudulent in fact on their face because made to the use of the grantor and the necessary effect of delaying all other creditors,

which would have resulted from the indefinite, unlimited control which was vested in the trustee.

The sequel fully confirms the charge of such an arrangement by the fact that the trustee did run said business for fifteen months, buying and selling new goods, just as the supply company had done. Counsel for garnishee urge that the trustee entered into no binding obligation to continue the business. What was the purpose of having the directors pass a formal resolution authorizing him "to carry on and conduct the business of this company, and do whatever he may consider to the best interest of all concerned?"

So far as he could be bound to carry out an unlawful engagement he was obligated to perform the authority which he had sought and obtained, and he did carry it on until this attachment stopped the enterprise. The new merchandise account of $16,650.07 conclusively disproves the claim that such new material was bought simply to complete the unfinished work and orders on hand.

This discussion also disposes of the objection to the second and third declarations of law. We find no error in either of them.

As to the claim of estoppel interposed in this court that plaintiff had received a circular letter informing it of the trustee's possession, it is sufficient to observe that defendant submitted no declaration upon that question in the circuit court and saved no exceptions, consequently the point is not here for review. The evidence was before the court and it found against it the claim.

No error was committed in refusing defendant's three declarations, numbers 5, 8 and 9.

It is not the law that a preferred creditor can still claim his preference in the attached property when the court or jury finds he has been a party to a fraudulent contrivance to defeat or delay other creditors, neither did it matter that the property described in the deeds of trust was less in value than

the bank's claims. The agreement was fraudulent in law whether the property which it affected was large or small.

We have already said that the resolution of the supply company could be considered as if written into the convey-ances.

It is familiar law in Missouri that facts which would render a conveyance void if expressed on its face will like-wise render it void if found by the court or jury *aliunde* to have constituted a part of the transaction. [McDonald & Co. v. Hoover, 142 Mo. 484.]

Upon the whole we find no reversible error and are of the opinion the judgment was for the right party and it is accordingly affirmed. SHERWOOD, J., concurs; BURGESS, J., absent.