JOHN H. GEE et al., Interpleaders, Respondents, v.
VAN NATTA-LYNDS. DRUG COMPANY, Ap-
pellant.

Kansas City Court of Appeals, December 7, 1903, and February 1,
1904.

1. **FRAUDULENT CONVEYANCES: Unconditional Conveyance:
Contingent Liability: Creditors.**  In the absence of fraud a
mortgage on its face purporting to secure an unconditional
debt is not void as to creditors though in fact given to secure
a contingent liability.

2. **————: Mortgagor in Possession: Stock of Goods: Usual Busi-
ness.**  When a mortgagor remains in possession disposing of
the mortgaged goods in the usual course of business without
accounting in any manner to the mortgagee, the mortgage is
void as to creditors.  Cases considered and distinguished and
the point is affirmed on motion for rehearing.

3. **TRIAL PRACTICE: Uncontradicted Testimony: Duty of
Court.**  When there is but one witness and no question raised
as to his credibility it becomes the duty of the court to declare
the effect of his testimony as a matter of law.

Appeal from Nodaway Circuit Court.—*Hon. A. D.
Burnes,* Judge.

REVERSED.

*B. R. Martin* and *Culver & Phillip* for appellants.

(1)   The court erred in refusing the demurrer to the evidence.   The mortgage under which interpleaders claim title is void  as against appellant.   Sanford v. Wheeler, 33 Am. Dec. 389; Ayers v. Husted, 15 Conn. 513; Bramhall v. Flood, 41 Conn. 71; Pattison v. Letton, 56 Mo. App. 325; Mokaska Mfg. Co. v. Steele, 36 Mo. App. 496; Bank v. Lime Co., 43 Mo. App. 496; Galbreath v. Cook, 30 Ark. 417.   (2)   The mortgage is fraudulent and void because to the use of the mortgagor. Lodge v. Samuels, 50 Mo. 204; Gutta Percha Mfg. Co. v. Supply Co., 149 Mo. 538; McDonald v. Hoover, 142 Mo. 484; Leather Co. v. Hardware Co., 57 Mo. App. 297; Grocer Co. v. Miller, 53 Mo. App. 107; Kuh v. Garvin, 125 Mo. 547; Bank v. Powers, 134 Mo. 432; McCarthy v. Miller, 41 Mo. App. 200; Bullene v. Barrett, 87 Mo. 185; Mercantile Co. v. Perkins, 63 Mo. App. 310; Shoe Co. v. Gallant, 53 Mo. App. 423; Rubber Mfg. Co. v. Supply Co., 149 Mo. 550.

*Shinabargar & Cook* for respondents.

(1)   An indemnity chattel mortgage is valid as against attaching creditors, although it appears on its face to secure the payment of a definite sum, and parol evidence is admissible to show the true consideration. Sparks v. Brown, 33 Mo. App. 505; Sparks v. Brown, 46 Mo. App. 529; Minor v. Sheehan, 30 Minn. 419, 15 N. W. 687; Goodheart v. Johnson, 88 Ill. 58; Williams v. Alnutt, 72 Mo. App. 62; Biglow v. Casper, 145 Mass. 270; Jones on Chattel Mortgages (4 Ed.), sec. 90.   (2) It is insisted by opposing counsel that this provision renders the mortgage void as being to the use of the mortgagor.   According to the decisions of our Supreme Court, such a provision does not vitiate the mortgage. Dunham v. Stevens, 160 Mo. 95; State ex rel. v. Fidelity & Deposit Co., 94 Mo. App. 184.

BROADDUS, J.—The undisputed facts taken from appellant's statement are as follows:

On June 20, 1902, the Van Natta-Lynds Drug Co. sued Geo. Aley, Jr., on account for merchandise sold for $251.46 and obtained a writ of attachment in aid of said suit which was levied upon a stock of drugs belonging to the debtor, situated in his store at Quitman, Mo. Afterwards the respondents interpleaded for the goods, claiming the right to possession by virtue of a chattel mortgage executed to them by Aley, Jr. on March 25, 1902, to secure a note for $1,290. A trial resulted in a verdict and judgment for the interpleaders and the drug company appeals.

It appears from respondents' evidence without dispute that in 1900 Aley, Jr., purchased the stock from Dr. Carter. He borrowed $800 of the purchase price from a Mr. Weber, a banker, to whom he executed a first mortgage on the goods and the balance of the purchase money was secured to Dr. Carter by a second mortgage on the same property. Aley took possession of the store and conducted his business in the usual course of trade for about two years, during which time he paid nothing upon his debt. In March, 1902, Mr. Weber became dissatisfied with his security and thereupon he advanced sufficient money to pay off the Carter mortgage, and Aley executed to Weber his personal note due on or about one year after date for the entire indebtedness, amounting to $1,290 for the payment of which Aley's father and brother-in-law, interpleaders herein, became sureties. At the same time, Aley, Jr., executed to his father and brother-in-law an unconditional note for $1,290 payable on or before one year after date and secured it by mortgage upon his stock of drugs—the mortgage under which they claim title here.

The testimony for the interpleaders is that Aley, Jr., was not indebted to them in any sum and that the

note and mortgage was given to indemnify them against any loss they might sustain as sureties upon the Weber note. But the note upon its face is an unconditional promise for value received to pay the sum of $1,290 at maturity and the mortgage upon its face purports to secure an absolute existing indebtedness evidenced by the note aforesaid in consideration of the sum of $1,290 paid by the interpleaders to the mortgagor. The mortgage provides that "if the mortgagor shall pay to the mortgagees the aforesaid sum of $1,290 according to the terms of said note," it shall be void, otherwise the mortgagees are empowered to take and sell the property and apply the proceeds to the payment of said note. In other words, the note and mortgage which was duly recorded, created and secured an apparent indebtedness which, it is conceded, never in fact existed, for the interpleaders had paid nothing upon the Weber note nor had had they assumed the payment of it. It was further provided in the mortgage that until default or until such time as the mortgagees should deem themselves insecure the mortgagor might remain in possession of the property with "permission granted (him) to sell at retail from the above stock and to apply the proceeds on said note as the same can be spared from running expenses of said business." From the time the mortgage was given to the levy of the attachment, Aley, Jr., continued in possession of the store and conducted his business, buying and selling just as he did before the mortgage was given, during which time he paid but $100 on the Weber note. The interpleader Gee (who was the only witness) testified that he lived seven or eight miles from Quitman, that he was the brother-in-law of the mortgagor and had been for twenty-five years; that after the giving of the mortgage and the levy he was in Aley's store three or four times; that Aley, Jr., was in possession, running the business, selling his goods in the regular way and buying from wholesale houses whatever was necessary, if he needed anything, just like any other

merchant; that there was no difference in the manner
in which the business was conducted before and after
the mortgage was given; that he did not know that Aley,
Jr., was buying from the wholesale houses partly on
credit and partly for cash but supposed he was, that
being his idea of the way Aley was doing, that there was
no agreement or understanding as to what Aley, Jr.,
was to receive for his services nor what the expenses
were to be, nor was there any limit put upon them, nor
did the interpleaders know how much had been used for
expenses; that the mortgagor made no report or account
of either his expenses or sales and none was required
or requested; that none of the proceeds were turned
over to the interpleaders nor up to the time of the levy
had the interpleaders required the mortgagor to apply
any of the proceeds of the sales to the payment of the
debt, because it was not due; and that the mortgagor
"had been permitted to run that business since the exe-
cution of the mortgage just as he had before that mort-
gage was given." Gee further testified that he and his
father-in-law took the mortgage to secure themselves
and so that George could go on with his business. The
evidence showed that at the time the interplea was filed
that no default had occurred in the mortgage but as the
interpleaders "deemed themselves insecure," they
claimed the right to possession under the clause in the
mortgage which authorized them to take possession on
that ground.

On these undisputed facts disclosed by respondents'
evidence, it is insisted by appellant that the mortgage
is invalid and that the court erred in refusing a de-
murrer to the evidence. Error in the instructions is
also assigned. Appellant contends that the mortgage is
void for the reason that it discloses that its object was
to secure an indebtedness that did not exist; that the
note evidenced a fictitious lien; and that both concealed
the actual liabilities of the mortgagor, and the interest
he had in the mortgaged goods, which was calculated to

deceive his creditors. It is not denied that as between the parties thereto the mortgage in question is valid and that it was competent to show that, notwithstanding it purported on its face to be for an existing indebtedness, in fact it was in the nature of an indemnity. Williams v. Alnutt, 72 Mo. App. 62; Sparks v. Brown, 33 Mo. App. 505.

In Ayers v. Husted, 15 Conn. l. c. 513, the court held: ''The tendency of an absolute, unconditional note, given merely for the security of one who has assumed only a conditional liability for the maker, is directly to delude the creditors of the maker, and to mislead them as to his resources for the payment of his debts.'' See also, Sanford v. Wheeler, 33 Am. Dec. 389 (13 Conn. 165); Bramhall v. Flood, 41 Conn. 71; Pattison v. Letton, 56 Mo. App. 325; Molaska Mfg. Co. v. Steele, 36 Mo. App. 496, and Galbreath v. Cook, 30 Ark. 417, have no application to the question under consideration. We find only one decision in this State decisive of the question, viz.: Sparks v. Brown, 33 Mo. App. 505, the holding being that in the absence of fraud, a mortgage on its face although purporting to secure an unconditional debt, yet in fact to secure a contingent liability, is not void as to creditors. And so it was held in Blencoe v. Lee, 12 Bush (Ky.) 358; Goodheart v. Johnson, 88 Ill. 58. Consistency at least requires that we adhere to a former decision of this court, especially where it is founded upon respectable authority, although it may appear that other courts of equal respectability have held differently.

It is claimed that as the evidence showed that the mortgagor was permitted to remain in possession and sell his goods in the regular course of trade without being obligated to apply the proceeds to the mortgage debt and was permitted to run the business as he did before the mortgage was given, the mortgage is to the use of the mortgagor and void as to creditors. In Rubber Mfg. Co. v. Supply Co., 149 Mo. 538, it was

held: "If the grantor remains in possession after having made a deed of trust on his stock of goods for the benefit of another, and conducts the business as he had previously done, with no obligation to turn over the proceeds to the beneficiary, his conduct is fraudulent in law." In McDonald v. Hoover, 142 Mo. 484, the holding was: "The same facts that will render a conveyance void if expressed on its face will also render it void if proven *aliunde*." Rubber Mfg. Co. v. Supply Co., supra. There are many cases in this State in harmony with the latter case but we do not deem it necessary to cite them as the law is too well settled for dispute. And it seems that the court so held in instruction number one given for plaintiff.

The evidence disclosed that the mortgagor remained in possession of the goods with the knowledge and consent of plaintiff and conducted the business as he had previously without being required to turn over the proceeds to the mortgagees or to the banker, Weber, the payee in the note for which interpleaders were the sureties for the mortgagor, Aley, Jr. As already set out herein, the only witness who testified in the case was the plaintiff Gee who stated that he did not know that Aley, Jr., bought goods partly on credit and partly for cash, but he supposed that he did, which was equivalent to knowledge of the fact. Under these undisputed facts it was the duty of the court to have instructed the jury peremptorily to return a verdict for defendant.

But our attention is called to later decisions of the appellate courts in which it is claimed that the ruling in Rubber Mfg. Co. v. Supply Co., ante, has been modified, viz.: Dunham v. Stevens, 160 Mo. 95; State ex rel. v. Fidelity Co., 94 Mo. App. 184. In the former the holding was: "A mortgage of a stock of goods is not rendered fraudulent by the fact that the mortgagor is to remain in possession and sell in the usual course of trade, if he is required to account to the mortgagee of

the proceeds of his sales, to be applied to the mortgage debt." The same rule is also announced in the Fidelity Company case. But it is not perceptible that these two cases are in the least in conflict with the Rubber Mfg. Co. case. The difference lies in the fact that in the two former cases the mortgagor was required to account for the proceeds of sales while in the latter he was not, and it is the latter fact that makes the mortgage fraudulent.

There was no conflict in the evidence as there was but one witness who was one of the plaintiffs, and no question being raised as to his credibility, it became the duty of the court upon this uncontradicted testimony to declare the effect of his testimony as a matter of law.

Under this undisputed evidence the mortgage became fraudulent in law and the defendant's demurrer should have been sustained. The cause is reversed.

### OPINION ON MOTION FOR REHEARING.

BROADDUS, J.—It is still insisted by respondents that the court misapprehends the effect of the decision in Dunham v. Stevens, 160 Mo. 95. In the original opinion we held that the ruling in Rubber Mfg. Co. v. Supply Co., 149 Mo. 538, had not been modified by that in Dunham v. Stevens, supra. The contention of the respondents therefore is to the effect that in the latter case the holding is that, where a mortgagor by the terms of the mortgage is permitted to remain in possession of the mortgaged goods and to sell at retail and apply the proceeds on the debt, his failure, by the permission of the mortgagee, to make such application does not render the mortgage void as to creditors. It is not conceivable that the court intended to enunciate a conclusion so radically opposed to the well-established rule that the permission of the mortgagee to the mortgagor to sell and divert the proceeds of mortgaged property from the payment of the debt is void as to creditors. The object of the provision in the mortgage to allow the mortgagor

to remain in possession and to sell is that the proceeds shall go to the extinguishment of the debt; otherwise, such a provision would afford the most effective method that could be devised to defeat creditors in the collection of their claims.

In Dunham v. Stevens the mortgagee acted in good faith. For eighteen months the mortgagor returned to him each month a statement showing the amount of purchases and sales of goods and profits after deducting expenses. Not much was paid on the debt as the profits were small. The mortgagor kept up the stock to about its original value and the business was continued until the mortgagee became dissatisfied because his debt was not being paid as the mortgage provided, when he asserted his right to take possession.

Not so in this case. The mortgagee made no inquiries whatever as to what the mortgagor was doing in the business and the mortgagor made no reports to them, and they never at any time took notice of what the mortgagor was doing but supposed he was conducting the business as he had been before the giving of the mortgage—that is, in the usual and ordinary course for his own benefit. When it was shown that the mortgagor had not applied the proceeds of the sale of the goods upon the debt it made a prima facie case against the mortgagees at least which they did not attempt to meet.

The motion for rehearing is overruled.