HOME SAVINGS & LOAN ASSOCIATION, APPELLEE, V. WILLIAM L. SCHMITT, APPELLANT: WASH BROTHERS, INTERVENER, APPELLANT.

273 N. W. 497

FILED MAY 26, 1937. No. 29967.

*Paul L. Martin*, for appellants.

*R. P. Kepler* and *E. R. Kratz*, contra.

Heard before GOSS, C. J., ROSE, GOOD, DAY, PAINE and CARTER, JJ., and LIGHTNER, District Judge.

LIGHTNER, District Judge.

This case involves validity of an attachment levied by plaintiff on a portion of the merchandise stock of the defendant Schmitt. One of the questions in the case is the

validity of an instrument bearing the name "Trust Instrument," dated January 17, 1935, by which Schmitt turned over all his property to a trustee named in such instrument. Wash Brothers, intervener, claims that it purchased the property from the trustee on the 23d of April, 1935, prior to the attachment which was levied on the 10th of May, 1935. The suit was begun in the county court, where the attachment was sustained. Defendant and intervener appealed to the district court, where the attachment was again sustained, and defendant and intervener appeal.

A fuller statement of the facts is necessary for an understanding of the controversy. On and prior to January 17, 1935, William L. Schmitt, defendant and appellant, was in failing circumstances. His total indebtedness was $4,787, $2,340 of which was owing to the J. S. Brown Mercantile Company of Denver, Colorado. On January 17, 1935, George A. Robertson, representing the Rocky Mountain Association of Credit Men, which in turn represented the principal creditor and between which creditor and said Rocky Mountain Association of Credit Men there was some connection, called on Mr. Schmitt, and after some negotiations Mr. Schmitt executed the trust instrument above referred to. This trust instrument is too long to be set out here. Its main provisions and those necessary for an understanding of this case are, first, it transfers, sells and assigns all of Mr. Schmitt's property, consisting principally of merchandise, fixtures and book accounts, to the trustee J. B. McKelvy, who was the secretary and manager of the association for the purpose of securing the payment of Mr. Schmitt's entire indebtedness, and attached to the instrument is a list of his creditors with their addresses and the amount owing to each. Mr. Schmitt gave a nonnegotiable promissory note for the amount of such indebtedness, to wit, $4,787, due in one day, but McKelvy took immediate possession. The trust instrument provides that the trustee should continue to conduct the business, including the buying of new merchandise and otherwise carrying on the business as a going concern. He was required

to account for all money actually received by him. One of the principal objections of plaintiff to the instrument is the following provision therein, to wit:

"To pay the expenses incidental to the negotiation, preparation and execution of this trust and for the carrying of the same into effect, including necessary attorney's fees and a fee to the trustee equal to 15 per cent. of the value of the assets hereby transferred, assigned and sold to said trustee, which fee shall be due and owing to trustee immediately upon acceptance of this trust."

Appellee claims that this 15 per cent. provision created a new debt of $537 without consideration and in derogation of the rights of creditors. It bases this on the claim that the 15 per cent. was to be computed on the value of the assets fixed by the trustee, which was $3,580.30. Defendant and intervener contend that the 15 per cent. should be based on the sale of the stock to Wash Brothers for $1,007.14, making the fee $151.07. They do not discuss the 15 per cent. fee for value of fixtures and book accounts. The "Trust Instrument" on this point is obscure, since it does not state on what value the 15 per cent. shall be computed, but it is open to the construction that the value fixed by the trustee should be the basis for such computation. The trust instrument further provides that the balance of funds remaining on hand after the various expenses and outlays above referred to should be prorated among the creditors of grantor. The trust instrument also gives the trustee the right to sell said property or any part of it at public or private sale or he may continue the business of grantor at retail as long as he deems it advisable to do so.

The trustee continued the business until April 23, 1935, when he sold the stock to Wash Brothers, the intervener, for $1,007.14. There is no showing that the trustee while he was in possession made any accounting to any of the creditors. There is no showing how much, if any, of the book accounts was collected, no statement of the expenses incurred by the trustee in conducting the business; no statement to indicate what interest, if any, the creditors

had in the $1,007.14 received from Wash Brothers, nor what had become of the fixtures. The trustee made no attempt to follow the bulk sales law in making the sale to Wash Brothers.

While the trustee is required to account, the trust instrument does not provide when the trustee shall make account, nor is there any limit to the time during which he may continue the business.

Appellants cite many Nebraska cases holding that a chattel mortgage for the benefit of all the creditors of one in failing circumstances is valid. One of the cases cited by appellants is *Skinner v. First Nat. Bank of Pawnee City*, 59 Neb. 17, 80 N. W. 42, wherein the court say:

"The evidence on the hearing of the motion showed that the claims which the defendants intended to secure were valid claims, and that they turned over substantially all their property for the purpose of having it sold, and the proceeds applied *pro rata* among their creditors. Every circumstance indicates that it was the purpose of the defendants to pay their creditors as fast as possible, and not to hinder or delay them in the collection of their debts."

The mortgage under discussion in *Sloan v. Thomas Mfg. Co.*, 58 Neb. 713, 79 N. W. 728, was given to secure 65 creditors. The court held that it was valid. There was no provision for carrying on the business of the mortgagor.

Most of the cases cited by appellants relate to chattel mortgages. The form or name of the instrument has in our judgment little bearing upon its validity. The general rule seems to be that an assignment for creditors which authorizes the assignee to continue the assignor's business is fraudulent as against nonconsenting creditors. In the annotation found at 23 A. L. R. 199, it is said by the annotator that the courts condemn such assignments "a. When continuing business operates unduly to hinder and delay creditors. b. When continuing business puts the assigned estate in jeopardy and creditors to the hazard of loss. c. When provisions for continuing the assignor's business hamper the action of the courts or creditors." Continuing

the business is sanctioned by the courts (a) when it is ancillary or subsidiary to closing the trust; (b) when the purpose is to continue agricultural operations, or (c) to finish partly manufactured commodities.

The following quotations from the annotation give some of the reasons assigned by the courts for such holdings:

"A conveyance in trust to secure a debt by an insolvent debtor upon an understanding by the parties to it that the trustee shall continue indefinitely the debtor's business, and, in carrying it on, shall buy and sell goods at will, with no restrictions requiring him to sell only stock on hand or to buy only whatever may be absolutely needed to make unfinished products marketable, is, as respects unsecured and objecting creditors, fraudulent in law, however free may have been the transaction from actual fraud and bad faith. *Gutta Percha Rubber Mfg. Co. v. Kansas City Fire Department Supply Co.* (1899) 149 Mo. 538, 50 S. W. 912." 23 A. L. R. 200.

"The most frequent reason given by the courts for condemning general assignments and deeds of trust by insolvent debtors for the benefit of creditors, containing provisions authorizing assignees and trustees to continue to carry on the businesses, trades, and operations of the debtors without restrictive conditions respecting time, extent, and expenditure, is that they put the property of the debtors beyond the reach of their creditors for an uncertain and indefinite period, and of necessity operate unduly to hinder and delay creditors in effectively pursuing their ordinary legal remedies to collect their debts." 23 A. L. R. 202.

"Another reason for judicial disapproval of any provision in a general assignment or deed of trust for the benefit of creditors, looking to the carrying on generally of the assignor's business, is that it subjects the corpus of the estate to the hazard of losses in an unsuccessful enterprise." 23 A. L. R. 207.

It seems to us that the trust instrument here under consideration is invalid both on account of the 15 per cent.

provision which immediately created a new debt and to that extent placed his property beyond the reach of his present creditors, and for the further reason that it subjected the property to the hazard of continuing the business, converting it into money without using it to pay his creditors, but to pay the expenses of the new business, including the purchase of merchandise to be used therein. It can hardly be successfully urged that a transaction such as here under examination which placed Mr. Schmitt's entire property in jeopardy and which immediately consumed at least 15 per cent. thereof and probably a great deal more is not fraudulent.

Appellants contend that plaintiff accepted the trust instrument by filing its claim and by continuing to rent the building to the trustee. Plaintiff's claim is for rent prior to January 17, 1935, and on the 21st day of March, 1935, it filed its claim of $150 therefor with the trustee. It is not shown that plaintiff knew anything about the provisions of the trust instrument when it filed its claim, and Mr. McKelvy's letter sent out on January 21, 1935, inviting plaintiff to file its claim does not set forth the provisions of the trust instrument, but does notify plaintiff that they will continue to operate the business for 30 or 60 days. The mere fact that plaintiff continued to rent the building to the trustee would not in our judgment constitute waiver of any of its rights.

Undoubtedly plaintiff acquiesced in the operation of the business by the trustee for the 30 or 60 days mentioned in the letter of January 21, 1935, but the trustee actually had operated it for more than 90 days before the sale to Wash Brothers. Furthermore, there is no showing that plaintiff knew any of the provisions of the trust instrument, and especially there is no showing that he knew of the 15 per cent. provision above referred to.

Appellants claim that the only alleged grounds for attachment is that defendant was about to remove his property, or a part thereof, out of the county with intent to defraud his creditors, and was about to convert his property,

or a part thereof, into money for the purpose of placing it beyond the reach of his creditors. The briefs of all parties proceed on the assumption that the trust instrument is decisive of the case. Since it authorizes a sale of the trust property by the trustee and immediate payment of the 15 per cent. to him, its effect is to convert part of Mr. Schmitt's property into money and to place it beyond the reach of his creditors. It seems therefore that there was ample evidence to sustain the finding of the district court.

Wash Brothers, intervener, claims the property, but its ownership also depends upon the validity of the trust instrument. If such instrument was invalid, then the sale to Wash Brothers was void under the bulk sales law.

Other points are made by appellants, but for the reasons above stated the judgment of the district court must be and it hereby is affirmed.

AFFIRMED.